BRADLEY, Presiding Judge.
This appeal arises out of an employee’s disqualification from receiving unemployment compensation benefits.
The claimant, Preston Brady, was initially awarded compensation benefits by the Alabama Department of Industrial Relations. However, Mr. Brady’s former employer, NYCO, Inc. of Alabama, appealed this initial decision.
On appeal, the trial court determined that: (1) Mr. Brady was demoted from his position as a supervisor to that of a security guard; (2) Mr. Brady refused to accept the lower salaried position; (3) Mr. Brady voluntarily quit his employment without good cause; and (4) pursuant to section 25-4-78(2)(a), Code 1975, Mr. Brady was disqualified from receiving unemployment benefits.
The facts surrounding Mr. Brady’s “demotion” and his leaving his job are basically as follows. On the morning of January 25, 1986 Mr. Brady, as supervisor, went to *651 Providence Hospital to insure that the NYCO security guards assigned to the hospital had reported for duty and were ready for work.
After arriving at the hospital Mr. Brady was apprised that one guard would be arriving late. Mr. Brady handled the situation through the hospital’s communications officer and the head of hospital security. Mr. Brady then left the hospital.
The general manager of NYCO, Mr. Lankford, subsequently contacted Mr. Brady at home by telephone. In their first conversation, the incident at the hospital was discussed. The manager was not pleased with Mr. Brady’s resolution of the problem at the hospital. Then, in a second conversation between the two men, Mr. Brady was removed as supervisor, and during a third call, Mr. Brady was offered a standard guard position, which he refused.
On appeal from the trial court’s determination that no benefits should be awarded, Mr. Brady contends that he had good cause to voluntarily leave his employment and, consequently, he should not be denied unemployment compensation.
The pertinent code section provides:
“Disqualifications for benefits.
“An individual shall be disqualified for total or partial unemployment:
[[Image here]]
“(2) Voluntarily quitting work: If he has left his most recent bona fide work voluntarily without good cause connected with such work.”
§ 25-4-78(2), Code 1975.
For an employee to be eligible for unemployment benefits, he must have terminated his employment for reasonable cause. State, Department of Industrial Relations v. Prance, 369 So.2d 289 (Ala.Civ. App.1979). Reasonable cause is defined as a material and substantial cause in light of the circumstances. Prance, supra.
The general rule in Alabama is that a substantial reduction in an employee’s earnings establishes good cause for the employee’s leaving his employment. Davis v. Prestwood, 381 So.2d 85 (Ala.Civ.App.1980). However, we must examine the facts of each case to determine whether the pay reduction in question actually constituted good cause. Prance, supra. This inquiry into good cause focuses on whether a normal worker, faced with similar circumstances, would have also terminated his employment. Prance, supra.
We have previously noted that the court found that Mr. Brady voluntarily quit his job without good cause. Whenever a court orally hears a case without a jury, the findings are presumed correct absent a showing that they are against the great weight of the evidence. Davis, supra.
We have examined the record and find that Mr. Brady’s annual earnings would have been reduced by $3,000 as a result of the demotion. Consequently, we now look to see whether, under the particular circumstances of this case, this pay reduction constituted good cause for Mr. Brady’s leaving his employment. Prance, supra. In reaching our decision, we examine whether an average worker faced with Mr. Brady’s situation would have similarly terminated his employment. Although we admit that the $3,000 cut is a substantial reduction in pay, we find that in light of the particular circumstances Mr. Brady did not have good cause to quit.
The evidence in the record reflects that Mr. Brady had been counseled by his employer’s manager, Mr. Lankford, on numerous occasions for errors committed by Mr. Brady in carrying out his duties as a supervisor of security guards. As an example, Mr. Lankford testified that Mr. Brady on one occasion permitted a security guard to make a supervisory decision which was contrary to established policy. Mr. Lank-ford further testified that the Providence Hospital incident was but one of many instances where Mr. Brady had demonstrated an inability to carry out his duties as a supervisor. According to Mr. Lankford, Mr. Brady was good at following specific instructions and therefore performed well as a guard, but he was apparently unable to make independent decisions as a supervisor.
The evidence does not suggest that NYCO wanted Mr. Brady to perform his *652 supervisory duties at a reduced wage but, rather, his responsibilities were being reduced along with a concomitant reduction in wages. In these circumstances, the trial court could have reasonably determined that an average worker experiencing difficulty with increased job responsibilities would not terminate his employment when offered a job more suited to his evident abilities.
In light of the evidence indicating that Mr. Brady was more suited for the duties of a security guard than a supervisor of guards, we conclude that the trial court’s finding that Mr. Brady did not have good cause to leave his employment was reasonable and we, therefore, affirm its judgment.
AFFIRMED.
HOLMES and INGRAM, JJ., concur.