This is an unemployment compensation case.
After resigning her position with the Department of Corrections (DOC) as a correctional officer, Susan Stokes (claimant) applied for unemployment compensation benefits. She claimed she left the job for good cause connected with the work. The claims examiner for the Department of Industrial Relations (DIR) ruled that the claimant was clear for payment. DOC appealed, and after a hearing before an appeals referee, the examiner's determination was affirmed. DOC then appealed to the Board of Appeals. After hearing the testimony and considering the evidence presented, the Board of Appeals affirmed the decision of the appeals referee. DOC appealed to the circuit court for a de novo hearing pursuant to Code Ala. 1975, § 25-4-95 (1986 Repl. Vol.). After receiving ore tenus evidence, the trial court found that the claimant terminated her employment for good cause connected with the work. DOC appealed.
The issue on appeal is whether the trial court erred in determining that the claimant terminated her employment for good cause connected with the work.
DOC contends that the claimant voluntarily quit without reasonable cause connected with the work and is not entitled to receive unemployment compensation benefits. Further, DOC contends that the claimant failed her duty to make reasonable efforts to identify her employment difficulties to the employer to allow opportunity for correction.
The essential facts revealed are: Claimant was employed by DOC. After receiving certain training provided by DOC, she was assigned to an all male prison in August 1987. In training she was advised that masturbation among inmates in a prison setting was not uncommon. Claimant *Page 957 
was assigned to work in an area of the prison where she regularly saw nude or partially clothed inmates showering, toileting, and dressing. During the course of her employment with DOC, claimant observed male inmates masturbating and reported this to her supervisors. She was told by her supervisors to write counselor's reports to begin the progressive disciplinary process. It is undisputed that she followed these instructions.
Several months into her job assignment, one particular inmate masturbated in front of her on several occasions. There was testimony that this particular inmate had past problems with this type of behavior and had previously attacked an officer within the institution following an incident involving such behavior. The claimant was familiar with the inmate's past behavior.
Claimant had been raped when she was 17. She did not inform DOC of this until after her resignation. After witnessing and reporting the inmate's repeated acts of masturbation in front of her, the claimant began counselling for depression in late December 1987, or early January 1988. She was hospitalized on January 6, 1988. The hospitalization of over a month was followed by intensive outpatient therapy and resulted in her physician's recommending that she resign from her work. She signed a notice of resignation that DOC had typed for her indicating that she was resigning at the recommendation of her personal physician. At an exit interview with the warden, she did not offer that her depression was due to her work at the prison. There was testimony that neither the warden, nor any DOC supervisor, inquired if claimant's depression was possibly work-related. There was also testimony that the claimant did not inform DOC that her depression was due to factors at work until after her resignation. Additionally, there was evidence that claimant was very sick the two months preceding her resignation.
The law is well settled that a trial court's findings, in an unemployment compensation case based on evidence presented ore tenus, are presumed correct and will not be reversed on appeal unless clearly contrary to the great weight of the evidence.Vulcan Materials Co. v. Holst, 418 So.2d 152
(Ala.Civ.App. 1982). An employee is disqualified from receiving unemployment compensation benefits if he or she voluntarily left the employment without good cause connected with the work. Code Ala. 1975, § 25-4-78 (1986 Repl.Vol.). The burden of proof rests with the claimant and may be established without medical testimony. Vulcan, supra. The test of whether the employee left the employment for good cause connected with the work is that of what is reasonable under the circumstances.Hadley v. Director of Department of IndustrialRelations, 473 So.2d 519 (Ala.Civ.App. 1985).
In addition to contending that claimant's resignation was without good cause connected with the work, DOC strongly argues that the claimant should have made efforts to resolve work problems before resorting to resigning, citing as controlling authority our cases of LaGrone v. Department of IndustrialRelations, 519 So.2d 1345 (Ala.Civ.App. 1987), andHadley, supra. The facts of those cases substantially differ from the facts before us here.
In Hadley, supra, the employee, a seamstress with her employer for five years, quit one day after being informed that production was increased, because she felt it would reduce her pay. Although a grievance procedure and a union existed, she never utilized such, choosing instead to quit before trying. We affirmed the trial court's holding that the grievance policy was reasonable and that her failure to follow the policy or attempt the work, without showing any excuse, evidenced a willful disregard for the consequences and an indifference as to whether or not she worked.
In LaGrone, supra, a claimant "walked away" from a work assignment after approximately six hours on the job that particular day. The claimant had notified his employer in general terms, two months earlier, that his doctor had advised him to reduce his work hours. However, he had failed to actually provide a specific medical report of his condition to his employer and *Page 958 
had not attempted to make clear, to his employer, the problem with the number of hours he worked. In fact, there was testimony that he complained when the number of work hours dropped due to a lull in the business. We affirmed the trial court's conclusion that, under those facts, a reasonably prudent employee would have endeavored to resolve the work grievance in a less confrontational manner before taking the drastic step of quitting his job.
Clearly, the claimants in LaGrone, supra, andHadley, supra, had ample time and methods available to attempt to resolve work problems. In the facts before us now, that is simply not the case. The claimant here had followed her supervisors' instructions regarding the progressive disciplinary process for the inmate. The evidence showed that she wrote the inmate a disciplinary action report on December 31, 1987, but was hospitalized before the disciplinary hearing was held. The hospitalization and intensive outpatient treatment that followed resulted in her physician's advising her not to return to work. Her resignation promptly followed. Clearly, the evidence supports the trial court's findings that her resignation was for good cause connected with the work and was reasonable under the circumstances. Accordingly, we affirm.
AFFIRMED.
INGRAM, P.J., and RUSSELL, J., concur.